IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES G. WAGNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. |
| | ) |
| NORTHERN ILLINOIS GAS COMPANY, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff, JAMES G. WAGNER, by and through his attorneys, THE COFFEY LAW OFFICE, P.C., complains and state under oath of Defendant as follows:

### Nature of Case

1. Plaintiff brings this action against Defendant for all relief available under the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), in particular, 29 U.S.C. §§ 1132(e)(1), 1132(f), and 1140, to redress Defendant's breach of fiduciary duty and illegal termination of his employment, which was done pretextually and for the purpose of interfering with his rights under an employee benefit plan.

### Jurisdiction and Venue

2. This Court has original jurisdiction over Plaintiff's ERISA claims under 28 U.S.C. §§ 1331 and 1343, as well as Sections 1132(e)(1) and 1132(f) of ERISA.

3. Venue is proper in the Northern District of Illinois since the Plaintiff and Defendant both reside within this district; and all events relevant hereto took place within this District. 29 U.S.C. § 1133(e)(2); 28 U.S.C. § 1391.

4. While the ERISA statute provides, at 29 U.S.C. § 1133, a mechanism for administrative or internal appeal of benefit denials under some circumstances, here, exhaustion of any such remedies would be futile and any such remedies would be inadequate.

**The Parties**

5. Plaintiff, JAMES G. WAGNER (hereafter "James"), is an individual residing at all relevant times in Mokena, Illinois.

6. Defendant NORTHERN ILLINOIS GAS COMPANY (hereafter "Nicor"), is a domestic corporation registered and licensed to do business in Illinois, and at all times relevant to the allegations herein, operated a significant business in Naperville, Illinois.

7. Nicor employed James from April 2002 to October 5, 2015, when it illegally terminated his employment, and then again from September 20, 2016, to date.

8. While James was employed by Nicor, it provided him with the group health (i.e., medical, surgical, and hospital care) and disability insurance benefits at issue in this dispute.

9. At all times relevant hereto, the group health and disability insurance plans (the "Plans") at issue in this dispute constituted "employee welfare benefit plans" as defined by ERISA § 3(1) (29 U.S.C. 1002(1)).

10. Nicor was the "plan sponsor" of the Plans as defined by 29 U.S.C. § 1002(16)(B). Nicor was also a "fiduciary" of the Plans, as the term "fiduciary" is defined by ERISA § 3(21) (29 U.S.C. § 1002(21)), as well as a "party in interest" as defined by ERISA § 3(14) (29 U.S.C. § 1002(14)).

11. While employed by Nicor, James was at all relevant times a "participant" in

the Plans as defined by 29 U.S.C. § 1002(8). This claim relates to benefits he had a right to under the Plans.

## The Pertinent Facts

12. James began his employment with Nicor in or around April 2002.

13. His most recent position was Operations Mechanic.

14. On July 25, 2014, while working for Nicor, James injured right knee (i.e., a grade 3 meniscus tear and complete ACL tear).

15. Shortly after the workplace accident, James began receiving related medical treatment, and was off from work on medical leave of absence.

16. James thereafter complied with Nicor's work-related injury policies and procedures.

17. On September 26, 2014, James underwent surgery (arthroscopy, with ACL reconstruction with allograft and partial medial meniscectomy) on his right knee.

18. James thereafter received medical treatment and physical therapy, including monthly follow up visits to his surgeon, Dr. Hurbanek, who determined that he was not able to return to work ("RTW").

19. In May 2015, Dr. Hurbanek recommended a second right knee arthroscopy surgery, and continued his assessment that James was not able to RTW.

20. Dr. Hurbanek timely communicated his professional opinion and assessments to Nicor.

21. Shortly thereafter, Nicor's claims adjuster stopped returning James' calls and Nicor failed without explanation or communication to approve the recommended second right knee surgery.

22. James consequently retained workers compensation counsel, and on July 14, 2015, James, through counsel, filed an Application for Adjustment of Claim with the Illinois Worker's Compensation Commission (Case No. 15 WC 22862).

23. On August 31, 2015, James was examined by the company's IME doctor, Dr. Lieber.

24. Dr. Lieber spent less than 10 minutes speaking with James, including about 2 minutes examining his knee.

25. At some point thereafter, Dr. Lieber issued a letter dated August 31, 2015, to Nicor's third-party case management provider and therein concluded that James "does show evidence of exaggeration of symptoms," "requires no further treatment at this time or in the future in association with the alleged July 25, 2014, work event," and that he "is able to return to work full duty employment with no restrictions."

26. On September 24, 2015, Nicor, via telephone call from HR Manager Julie Perion, notified James that Dr. Lieber had released him to RTW full duty, and inquired if he could come into his reporting office in Glen Ellyn, Illinois, the following day to complete RTW paperwork.

27. James told Ms. Perion that he had not been made aware of Dr. Lieber's opinions or report, that he needed a second right knee surgery, and that he had not been released to RTW.

28. As it turned out, on September 23, 2015, workers' comp counsel for Nicor sent a letter via e-mail to the wrong attorney attaching a copy of Dr. Lieber's August 31, 2015, report and stating that based thereon, Nicor will not authorize the second surgery and terminated TTD payments as of September 20, 2015.

29. James and his workers' comp counsel did not receive this emailed letter and the Dr. Lieber report until the following day, September 24th, and only after Ms. Perion's call to James.

30. James through his worker's compensation counsel, filed a motion with the IWCC for immediate hearing to resolve the dispute between the doctors whether James was able to RTW.

31. On September 29, 2015, James e-mailed Ms. Perion, with a copy to Nicor supervisory employees Lori Hoette and Elizabeth Hohenberger, stating that:

> Due to the conflict of medical doctor's health status, for my work related injury, I need to change my work status from Workers Compensation to STD EBA as of September 20, 2015.
>
> Please send me the appropriate forms for the STD EBA as soon as possible via email or fax.
>
> I was notified on September 24, 2015 that my Worker Comp Pay will be stopped on September 20, 2015. My Orthopedic Surgeon is saying NO WORK until after SURGERY. Corvel's IME Doctor, is showing all is good. Therefore, it is now a legal issue that I am caught in the middle of.
>  . . .
> I do not want to lose my job and am hoping to get the medical care necessary so I can, in fact, return to work. I have been waiting for surgery since May 2015.
>  . . .

32. Nicor referred to its short-term disability plan as "EBA." Participation in the EBA was a prerequisite to coverage in Nicor's long-term disability plan.

33. On September 29, 2015, James also called Ms. Perion and left a voice message to the same effect.

34. On September 30, 2015, James forwarded a copy of his Sept 29th email to Ms. Perion, and also called and left her another message.

35. On September 30, 2015, Ms. Perion returned James' call and notified him

5

that he was required to report to work the following Monday, October 5th, or Nicor would terminate his employment.

36. Neither Ms. Perion, nor Nicor replied to James' requests that his work status be changed to STD EBA, or that she send him appropriate forms for the STD EBA as soon as possible via e-mail or fax.

37. On Thursday, October 1, 2015, James received a letter from Ms. Perion stating "[t] his letter notification that you are required to return to work no later than Monday, October 5, 2015 or your employment is subject to termination for job abandonment. The company received documentation that you were able to return to work without any restrictions effective September 20, 2015."

38. On October 1, 2015, James e-mailed Ms. Perion, Nicor's claims adjuster, his union representative and other Nicor employees stating that his workers' compensation counsel had advised him to not return to work since it would be against the medical advice of his surgeon Dr. Hurbanek, and could jeopardize his health and safety.

39. On October 3, 2015, James again e-mailed Ms. Perion stating that he is not abandoning his job, and that the contradiction between his doctor and Nicor's doctor will be presented to an arbitrator with the IWCC through an emergency petition. He stated that Nicor's cutting off his workers' compensation benefits and threatening him with discharge was deplorable.

40. On October 6, 2015, James received Ms. Perion's October 5th letter stating that Nicor terminated his employment because he "failed to report to work [on October 5th] as instructed," based on "current documentation that we have indicates

6

that you are able to return to work with no restrictions."

41. Four Director-level employees of Nicor, plus two other employees with extensive HR and Labor Relations experience were involved in deciding to discharge James. Nicor also consulted with lawyers before terminating James' employment.

42. On November 3, 2015, Dr. Hurbanek again examined James, reviewed his file and again determined that the best course of treatment for James was a second right knee surgery. Dr. Hurbanek continued his assessment that James was not able to RTW.

43. On June 16, 2016, James, though his counsel, e-mailed Nicor's Senior Litigation Counsel, Stephanie Holmes, and requested that Nicor immediately reconsider and reverse its illegal termination of his employment, and reinstate him with no loss of benefits or seniority. He cited applicable/supporting case law that showed Nicor's October 5, 2015, termination of Jim's employment was an illegal retaliatory discharge. He attached a copy of a draft verified complaint setting forth the pertinent supportive facts.

44. Neither Ms. Holmes nor Nicor replied.

45. On July 15, 2016, James therefor filed a lawsuit in the Circuit Court of the 18th Judicial District, DuPage County, Illinois, action against Nicor to recover damages proximately caused by Defendant's illegal retaliatory termination of his employment in violation of the Illinois Worker's Compensation Act, 820 ILCS § 305/1 et seq., and the public policy of the State of Illinois. (Case No. 2016 L 646). Such case is still pending and in discovery. No trial date has been set.

46. In August 2016, though his counsel James again e-mailed Nicor setting

forth the basic, primarily undisputed facts and applicable cases that demonstrated Nicor's discharge was an illegal retaliatory discharge. James again demanded that Nicor reconsider and reverse its illegal termination of his employment, and reinstate him as an employee with no loss of benefits or seniority. James also demanded that Nicor fully cooperate in re-enrolling him into its group health plan and disability plans, and explained that Nicor's illegal termination caused him to lose coverage under the Plans which increased and aggravated his economic and emotional damages.

47. On September 20, 2016, Nicor reinstated James as an employee, and placed him on an unpaid leave of absence.

48. James thereafter became eligible to re-enroll in Nicor's group health plan, and he did so.

49. In early November 2016, James filed his application/claim for long-term disability benefits under the Plans with Administrator Zurich American Life Insurance Company.

50. On December 30, 2016, James underwent a second right knee arthroscopy surgery performed by Dr. Hurbanek.

51. James thereafter received medical treatment and physical therapy, including monthly follow up visits with Dr. Hurbanek who determined that he was not able to RTW.

52. In late March 2017, Dr. Hurbanek released James to RTW April 3, 2017, and on that day James returned to work for Nicor in his former position per his physician's release.

53. Following his July 2014 workplace accident and knee injury, James

8

remained medically restricted from returning to work to his former position, and unable to perform the duties of his former position as well as any gainful occupation for which he was reasonably fitted by education, training, or experience, through to April 3, 2017, when his physician released him to return to work.

54. Also in late March 2017, Zurich issued its determination regarding James' claim for LTD benefits under the Plans, deciding that James was eligible to receive LTD benefits for the closed period of January 22, 2015 through January 21, 2016.

55. Nicor has stated under oath in a court filing (Affidavit of its Health & Welfare Benefits Manager, Susan O'Connell) in the DuPage County case that James "could have applied for long-term disability benefits before his discharge on October 5, 2015, but did not do so."

### Count I: Nicor's Illegal Breach of Fiduciary Duty in Violation of ERISA

56. James restates and fully incorporates into Count I his allegations set forth in Paragraphs 1 through 55, above.

57. ERISA, 29 U.S.C.S. § 1001 et seq., is a comprehensive statute designed to protect the interests of employees and their beneficiaries in pension and welfare benefit plans. ERISA mandates standards of conduct, responsibility, and obligations for fiduciaries of employee benefit plans and provides appropriate remedies, sanctions, and access to federal court. 29 U.S.C.S. § 1001(b). ERISA establishes duties of loyalty and care for fiduciaries as well as the obligation to act solely in the interest of the benefit plan and its participants and beneficiaries. 29 U.S.C.S. §§ 1104 and 1106. 29 U.S.C.S. § 1109 of the ERISA establishes liability for any breach of this fiduciary duty.

58. Fiduciaries breach their duties of loyalty and care, under the Employee

9

Retirement Income Security Act of 1974, 29 U.S.C.S. § 1001 et seq., if they mislead plan participants or misrepresent the terms or administration of a plan. Fiduciaries must also communicate material facts affecting the interests of participants. This duty exists when a participant asks fiduciaries for information, and even when he or she does not. ERISA allows for an action to enforce and seek appropriate relief because of a breach of fiduciary duty. 29 U.S.C. § 1132(a)(2). Section 1109 of ERISA makes "any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries" personally liable. Id. § 1109(a).

59. Nicor owed a fiduciary duty to James and his beneficiaries at all times relevant hereto in accordance with ERISA. Id. § 404 (29 U.S.C. § 1104).

60. As described above, Nicor breached is ERISA fiduciary duty to James in late September 2015 through early October 2015, when it failed and refused to reply to his requests that his work status be changed to STD EBA, and that it send him appropriate forms and information pertaining to its disability plans.

61. Nicor's breach proximately caused James to lose his rights to benefits under the Plans leaving him with no income from which to proceed with scheduling and paying for the necessary second surgery and delaying his RTW by approximately one year.

62. As a direct and proximate result of Nicor's illegal breach of fiduciary duty as described above, James has lost income in the form of wages, social security and other benefits, and has suffered emotional and physical pain, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, and he is expected to incur future damages.

**<u>Count II: Nicor's Illegal Discharge of James' Employment and Interference with his Rights in Violation of ERISA</u>**

63. James restates and fully incorporates into Count II his allegations set forth in Paragraphs 1 through 55, above.

64. ERISA makes it unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan. 29 U.S.C. § 1140.

65. As described above, Nicor's termination of James' employment was pretextual and purposefully interfered with his right to continued participation in and benefits under the Plans.

66. Nicor's illegal termination of James' employment as described above proximately caused him to lose coverage/eligibility and rights under the Plans which increased and aggravated his economic and emotional damages, and left him with no income from which to proceed with scheduling and pay for the necessary second surgery, delaying his RTW by approximately one year.

67. As a direct and proximate result of Nicor's illegal termination of James' employment and interference with his rights to and under the Plans, James has lost income in the form of wages, social security and other benefits, and has suffered emotional and physical pain, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, and he is expected to incur future damages.

**Prayer for Relief (as to all Counts)**

**WHEREFORE**, Plaintiff, JAMES G. WAGNER, respectfully requests that this Court enter judgment in his favor and against Defendant NICOR as follows:

A. Full equitable relief under ERISA, including appropriate back pay and reimbursement for lost pension, social security and other benefits and out-of-pocket expenses, plus pre-judgment interest in an amount to be shown at trial;

B. Compensatory damages in the maximum amount allowable under the law;

C. Costs incurred in bringing this action, including, but not limited to, expert witness fees and reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g); and,

D. Such other relief as the Court deems just.

                              Respectfully submitted,
                              Plaintiff, JAMES G. WAGNER,


                              By:    <u>/s/ Timothy J. Coffey</u>
                                      Timothy J. Coffey, Esq.
                                      THE COFFEY LAW OFFICE, P.C.
                                      Attorneys for JAMES G. WAGNER
                                      1805 North Mill Street
                                      Suite E
                                      Naperville, IL 60563
                                      (630) 326-6600